**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **ALFONC QEFALIA,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **EP-26-CV-01577-DB** |
| | § | |
| **WARDEN OF ERO EL PASO CAMP** | § | |
| **EAST MONTANA,** *et al.,* | § | |
| **Respondents.** | § | |

**ORDER**

On June 8, 2026, Petitioner Alfonc Qefalia filed a "Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241," ECF No. 1. Petitioner is currently detained at the Camp East Montana detention facility in the Western District of Texas. *Id.* at 1. He argues his detention is unlawful and asks the Court to order his release or a bond hearing. *Id.* at 7. Construed liberally, Petitioner is alleging his detention is unlawful because he has not been given an individualized hearing in violation of the Fifth Amendment. *Id.* at 6. After due consideration, the Petition is denied.

**BACKGROUND**

Petitioner, a native of Albania, entered the United States on or about February 14, 2026, near Nogales, Arizona. ECF No. 1 at 2. He was taken into immigration custody on February 16, 2026, and has remained detained since that time. *Id.*; ECF No. 9 at 1.[1] Petitioner is in full removal

[1] Petitioner states "shortly after entering the United States, [he] was placed in removal proceedings before the immigration court on or about February, 17, 2026. [He] was detained shortly thereafter and ha[s] remained continuously detained since that time." ECF No. 1 at 3. Further, Respondents advise "Petitioner has been continuously detained since February 16, 2026, when Texas DPS contacted ICE. Consequently, Petitioner has been held in immigration custody for 140 days as of todays date." ECF No. 9 at 1. Given this, the Court reasonably infers Petitioner has been in law enforcement custody since his arrival to the United States.

proceedings but does not have an administratively final order of removal. *Id.* To date, Petitioner has been detained in immigration custody over 140 days. ECF No. 9 at 1. Petitioner is being detained under 8 U.S.C. § 1225(b)(2)(A), which requires mandatory detention during the pendency of removal proceedings. ECF No. 5 at 1. Petitioner has not received an individualized assessment of his dangerousness or flight risk since he has been detained. ECF No. 1 at 4.

On June 8, 2026, Petitioner filed his Petition in this Court. Therein, he alleges that "he has remained detained for months despite the absence of any meaningful individualized determination that his continued detention remains necessary." ECF No. 1 at 4. Respondents timely responded and filed supplemental briefing. ECF No. 5; ECF No. 9. The Court addresses the parties' arguments in turn.

## LEGAL STANDARD

Section 1225(b) applies to an "applicant for admission," that is, "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Under § 1225(b)(1), an applicant for admission "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" is "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (quoting 8 U.S.C. § 1225(b)(1)(A)(i)). All other applicants for admission are covered by § 1225(b)(2), which "serves as a catchall provision," *Jennings*, 583 U.S. at 287, and which mandates detention "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted," 8 U.S.C. §

1225(b)(2)(A). But if the alien applies for asylum and has a credible fear of persecution, "the alien shall be detained for further consideration of the application." 8 U.S.C. § 1225(b)(1)(B)(ii).[2]

In *Jennings v. Rodriguez*, the Supreme Court, as a matter of statutory interpretation, held Immigration and Nationality Act ("INA") provisions applicable primarily to detention of aliens seeking entry to United States did not implicitly place a six-month limit on detention or require periodic bond hearings. 583 U.S. at 282. As such, there is nothing in the statute that placed any reasonable time limits on how long a noncitizen could be detained in immigration custody pending the outcome of their removal proceedings. *Jennings*, however, did not reach the merits of the constitutional challenge before it. *Id.* at 312 ("Because the Court of Appeals erroneously concluded that periodic bond hearings are required under the immigration provisions at issue here, it had no occasion to consider respondents' constitutional arguments on their merits . . . .[W]e remand the case to the Court of Appeals to consider them in the first instance.").[3] The precise question of whether the Constitution places any reasonable time limits on immigration detention without any individualized assessment in the pre-final order of removal context has not been considered in the Supreme Court or the Fifth Circuit. Assuming a time limit exists and detention becomes unreasonable, the Due Process Clause would demand a hearing, at which the Government

---

[2] Upon a positive credible fear determination, an alien is placed in section 240 removal proceedings, rather than the expedited removal proceedings described above, for a determination of the asylum claim. *See* 8 C.F.R. § 1235.6(a)(1)(ii).

[3] *See generally Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1200 (9th Cir. 2022) ("The Supreme Court in *Jennings* did not reach the alleged unconstitutionality of immigration detention absent the procedural requirements we had read into the statute, and instead remanded for consideration of the constitutional question in the first instance. [] We in turn remanded to the district court, which has not yet issued a decision. *See Rodriguez v. Marin*, 909 F.3d 252, 255 (9th Cir. 2018); *Rodriguez v. Barr*, No. 20-55770, 2021 WL 4871067 (9th Cir. Oct. 19, 2021)").

bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute.

## DISCUSSION

Respondents argue that since Petitioner is subject to mandatory detention under § 1225(b), which does not statutorily require he be given a bond hearing, any unconstitutionally prolonged detention claim is merely speculative. ECF No. 5 at 22. Before addressing the question of whether Petitioner's detention in this case has become unreasonably prolonged, the Court addresses whether the Fifth Amendment's Due Process Clause applies to 8 U.S.C. § 1225(b). After due consideration, this Court finds Section 1225(b)(2) is subject to a reasonable time limitation based on constitutional principles. Once detention becomes unreasonable, the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute.

A. The Fifth Amendment's Due Process Clause imposes a reasonableness requirement on detention pursuant to 8 U.S.C. § 1225(b).

"Substantive due process analysis must begin with a careful description of the asserted right." *Reno v. Flores*, 507 U.S. 292, 302 (1993) (internal quotation marks omitted). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Lousiana*, 504 U.S. 71, 80 (1992)). Petitioner's liberty interest is determined by his legal status in the United States and the statutory and regulatory framework that permits his detention. Once Petitioner's liberty interest is defined, this Court considers the current Supreme Court precedent regarding civil detention of aliens to determine whether Petitioner's detention under Section

1225(b)(2) is unconstitutional as applied to him given he has been detained for over 140 days without any individualized assessment.

1. *Petitioner is being detained under 8 U.S.C. § 1225(b)(2) as an "arriving alien."*

It is undisputed Petitioner is being detained under Section 1225(b)(2). ECF No. 5 at 1. Section 1225(b) applies to an "applicant for admission," that is, "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Under § 1225(b)(1), an applicant for admission "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" is "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (quoting 8 U.S.C. § 1225(b)(1)(A)(i)). All other applicants for admission are covered by § 1225(b)(2), which "serves as a catchall provision," *Jennings*, 583 U.S. at 287, and which mandates detention "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted," 8 U.S.C. § 1225(b)(2)(A). But if the alien applies for asylum and has a credible fear of persecution,[4] "the alien shall be detained for further consideration of the application." 8 U.S.C. § 1225(b)(1)(B)(ii).

Pursuant to 8 U.S.C. § 1225(b)(2)(A), arriving aliens—including those with a positive credible fear determination—are to be detained unless one of the limited statutory exceptions applies, allowing the Government to release the alien on parole. *Rodriguez v. Robbins*, 715 F.3d 1127, 1132 (9th Cir. 2013) ("*Rodriguez I*") However, the decision to release on parole is solely in

[4] Upon a positive credible fear determination, an alien is placed in section 240 removal proceedings, rather than the expedited removal proceedings described above, for a determination of the asylum claim. *See* 8 C.F.R. § 1235.6(a)(1)(ii).

the Attorney General's discretion, and unreviewable by an immigration judge or Article III courts. *See generally* 8 U.S.C. § 1182(d)(5)(A) ("The Attorney General may. . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States. . . ."); 8 U.S.C. § 1252(a)(2)(B)(ii)) ("[N]o court shall have jurisdiction to review . . . any other decision or action of the Attorney General. . . the authority of which is specified under this subchapter to be in the discretion of the Attorney General."). Accordingly, unless released on parole, an arriving alien will remain detained during the remainder of his removal proceedings. Here, Petitioner entered the United States on or about February 14, 2026, and has remained detained since. ECF No. 9 at 1.

2. *Arriving aliens are entitled to due process.*

There is no doubt that Petitioner's status as an arriving alien does not place him outside the ambit of constitutional protection. After all, the Supreme Court has made clear that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003). The real question is how much process an "arriving alien" is entitled to. Here, Petitioner is an arriving alien whom Respondents have determined is inadmissible — *i.e.* an "inadmissible alien". ECF No. 5 at 2. Inadmissible aliens, as distinguished by the Supreme Court, are not afforded the same breadth of rights as citizens or as aliens who are already present in the United States. In *Zadvydas*, the Court explained:

> [t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law. It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders. But once an alien enters the country, the legal circumstance changes, for the Due

> Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

*Zadvydas*, 533 U.S. at 693. Inadmissible aliens seeking entry are subject to the "entry fiction." Under the "entry fiction" aliens who have been denied admission to the United States yet are present within its borders are "treated, for constitutional purposes, as if stopped at the border," and are thus not entitled to the full range of constitutional protections to which citizens and aliens who have been admitted are entitled. *Id.* So while an inadmissible alien seeking entry is definitively entitled to due process, he may not be entitled to the same level of due process as afforded to the resident aliens in *Demore* and *Zadvydas*. Nonetheless, "whatever due process rights excludable aliens may be denied by virtue of their status, they are entitled under the due process clauses of the fifth and fourteenth amendments to be free of gross physical abuse at the hands of state or federal officials." *Lynch v. Cannatella*, 810 F.2d 1363, 1374 (5th Cir. 1987).

In *Zadvydas*, the Supreme Court noted that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Zadvydas,* 533 U.S. at 690. Because the statute's primary purpose for detaining aliens was to ensure an alien's presence for removal, the *Zadvydas* Court construed § 1231 to allow detention of aliens admitted to the United States but subsequently ordered removed only for "a period reasonably necessary to bring about [an] alien's removal from the United States." *Id.* at 689. The Supreme Court "construe[d] the statute to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review" and held that six months was a presumptively reasonable detention period. *Id.* at 682, 701. After this six-month period, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with

evidence sufficient to rebut that showing." *Id.* Several years later, the Supreme Court extended *Zadvydas* to find that inadmissible aliens held in post-removal detention are also entitled to this type of individualized review once their detention exceeds six months. *See generally Clark v. Martinez*, 543 U.S. 371 (2005) (extending *Zadvydas'* holding to inadmissible aliens as a matter of statutory interpretation).

In *Demore*, the Supreme Court condoned only brief mandatory detention during the pendency of removal proceedings for aliens detained under Section 1226(c), a statute that provides for mandatory detention of aliens who have been "convicted of one of a specified set of crimes." *Demore*, 538 U.S. at 513. The Court reasoned that "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons [] be detained for the brief period necessary for their removal proceeding." *Id.* at 513. Brevity was a prominent consideration for the Court.[5] In distinguishing the case from *Zadvydas*, the Court noted that the mandatory detention at issue was "of a much shorter duration" than the indefinite and potentially permanent detention in *Zadvydas*. *Id.* at 528. The Court explicitly found that detention under § 1226(c) "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which an alien chooses to appeal." *Id.* at 530. Accordingly, the Court held mandatory detention under Section 1226(c) was constitutional. *Id.* at 531.

---

[5] *See generally Shokeh v. Thompson*, 369 F.3d 865, 872 (5th Cir. 2004) ("*Shokeh I*") (explaining that "[t]he *Zadvydas* Court was troubled by the 'potentially permanent' nature of the detention," and that the *Demore* Court upheld the civil detention, "in part, because of the 'very limited time of the detention at stake'"), *vacated on other grounds*, 375 F.3d 351 (5th Cir. 2004) ("*Shokeh II*").

Because brevity of detention was at the forefront of the Court's analysis in *Demore*, lower courts have since held Section 1225(c) subject to a reasonableness limitation. *See, e.g.*, *Diop v. ICE/Homeland Security,* 656 F.3d 221 (3d Cir. 2011) (reading a reasonableness limitation into § 1226(c) and finding that a nearly three-year detention under § 1226(c) was unreasonable, and therefore, unconstitutional) *overruling on other grounds recognized in Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018) (noting *Jennings v. Rodriguez* did not call into question the constitutional holding in *Diop* that detention under § 1226(c) may violate due process if unreasonably long); *Ly v. Hansen*, 351 F.3d 263, 273 (6th Cir. 2003) (reading a reasonableness limitation into § 1226(c) and finding that detention for one and half years under § 1226(c) was unreasonable) *abrogated on other grounds by Jennings,* 583 U.S. 281; *Uritsky v. Ridge*, 286 F.Supp.2d 842, 846–47 (E.D. Mich. 2003) (reading a reasonableness limitation into § 1226(c) and finding that eleven to twelve month detention under § 1226(c) was unreasonable); *Reid v. Donelan*, 991 F.Supp.2d 275, 277 (D. Mass. 2014) (reading a reasonableness limitation into § 1226(c) and finding that detention over six months is presumptively unreasonable).

In the Fifth Circuit, one case is persuasive. While the Fifth Circuit has not clearly stated mandatory immigration detention is subject to a reasonableness limit, it has expressed doubts as to the constitutionality of prolonged mandatory immigration detention. In *Shokeh I*, an alien remained in detention pursuant to § 1231 solely because he was unable to afford bond. *Id*. The Fifth Circuit remanded the case to the district court to determine if the amount of bond was reasonable, explaining that the *Zadvydas* Court's concern over indefinite detention "is not ameliorated by release conditional on bond that the immigrant is unable to pay." *Id.* at 872–73. The Fifth Circuit reasoned

> [t]he *Zadvydas* Court was troubled by the "potentially permanent" nature of the detention .... The Supreme Court again emphasized the importance of the duration of detention in *Demore v. Kim*. In *Kim,* the Court upheld mandatory detention during removal proceedings of immigrants previously convicted of certain criminal offences, in part, because of the 'very limited time of the detention at stake under [the challenged statute].'

*Id.* at 872. *Shokeh I* was later vacated because the government released the alien without bond before the opinion was filed, rendering the case moot. *See Shokeh II*, 375 F.3d at 351. But, while *Shokeh I* is no longer precedential, it remains persuasive.

In sum, this Court agrees with the line of lower courts that have found civil detention of aliens is subject to a reasonable time limitation. *See, e.g. Maldonado v. Macias*, 150 F.Supp.3d 788, 805 (W.D. Tex. 2015) (collecting cases); *Castro v. U.S. Dept. of Homeland Sec.*, 835 F.3d 422, 449 n. 32 (3d Cir. 2016) ("We doubt, for example, that Congress could authorize, or that the Executive could engage in, the indefinite, hearingless detention of an alien simply because the alien was apprehended shortly after clandestine entrance."). Arriving aliens, even if at the lower level of due process totem pole, are still entitled to due process, and a statute permitting their indefinite detention is subject to constitutional scrutiny.

3. *Detention under Section 1225(b) is subject to a reasonableness time limitation.*

After due consideration, this Court finds Section 1225(b)(2) is subject to a reasonable time limitation. Once detention becomes unreasonable, the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute. A reasonable time limitation alleviates the Supreme Court's concern of the overbreadth of detention as expressed in *Zadvydas*. *Zadvydas* noted that removal proceedings were civil, not criminal, in nature, and held that *if* the government wished to

*indefinitely* detain a removable alien, it must show a "strong special justification" for such detention. *Zadvydas,* 533 U.S. at 690. The Court has made clear that the general goal of preventing danger to the community is insufficient to support indefinite civil detention. *Id.* at 690–91. ("we have upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections.").

"In cases in which preventive detention is of potentially *indefinite* duration, [the Court] ha[s] also demanded that the dangerousness rationale be accompanied by some other special circumstance, such as mental illness, that helps to create the danger." *Id.* at 691 (citing *Kansas v. Hendricks,* 521 U.S. 346, 368 (1997)) (emphasis in original). Furthermore, *Zadvydas* noted that "where detention's goal is no longer practically attainable, detention no longer 'bear[s][a] reasonable relation to the purpose for which the individual [was] committed." *Zadvydas,* 533 U.S. at 690 (quoting *Jackson v. Indiana,* 406 U.S. 715, 738 (1972)). The *Zadvydas* Court found that preventing danger to the community was not an adequate justification for indefinite detention of aliens under § 1231 where "the provision authorizing detention does not apply narrowly to a small segment of particularly dangerous criminals, say, suspected terrorists, but broadly to aliens ordered removed for many and various reasons, including tourist visa violations." *Zadvydas*, 533 U.S. at 691.

Here, the same reasoning applies to Section 1225(b)(2), which is a "catch-all provision." Aliens detained under this provision do not always have any sort adjudication of removability. Even when they do, an order of removal does not have full legal effect until it becomes administratively final.[6]

[6] "[I]n the deportation context, a 'final order of removal' is a final order 'concluding that the alien is deportable or ordering deportation.'" *Nasrallah v. Barr*, 590 U.S. 573, 79 (2020) (citing 8 U.S.C. § 1101(a)(47)(A)) ("The term "order of deportation" means the order of the special inquiry officer,

Individuals detained under Section 1225(b) could be in expedited removal proceedings, which are generally quick, or in full removal proceedings, which could last years. During the pendency of removal proceedings, the statute itself mandates detention without the opportunity for an individualized determination at any point on whether detention advances the purposes of the statute. In effect, the statutory language authorizes indefinite detention without any individualized "strong special justification."

From a constitutional perspective, this cannot be so easily accepted. While Congress certainly has the purview of establishing structures and procedures for the detention of different categories of non-citizens, Section 1225(b)(2) is riddled with the same constitutional concerns the Court expressed in *Zadvydas.* The Court made clear removal proceedings were civil, not criminal, and held that *if* the government wished to *indefinitely* detain a removable alien, it must show a "strong special justification" for such detention. *Zadvydas,* 533 U.S. at 690. The crux of Section 1225(b)(2)'s generalized "catchall" nature is that it does not provide for an individualized review of an alien's custody ever — no matter if for example, they are internationally convicted criminals or victims of international human rights violations.[7] Accordingly, the Court finds Section

---

or other such administrative officer to whom the Attorney General has delegated the responsibility for determining whether an alien is deportable, concluding that the alien is deportable or ordering deportation).

> (B) The order described under subparagraph (A) shall become final upon the earlier of--
> (i) a determination by the Board of Immigration Appeals affirming such order; or
> (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals.").

[7] Noncitizens mandatorily detained under Section 1225(b)(2) can only request discretionary parole from the Attorney General, a decision that is protected from any additional review. 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 1003.19(h)(2)(i)(B).

1225(b)(2) must be subject to a reasonable time limitation before the government must provide an individualized assessment as to whether detention continues to serve the statute's purpose.

Other courts that agree Section 1225(b) is subject to a reasonableness limitation on impose either a bright-line rule or assess reasonableness on a case-by-case basis. *Compare Rodriguez II*, 804 F.3d at 1078 ("Following *Zadvydas*, we have defined detention as 'prolonged' when 'it has lasted six months and is expected to continue more than minimally beyond six months.") *with Ly*, 351 F.3d at 271 (6th Cir.) ("A bright-line time limitation, as imposed in *Zadvydas*, would not be appropriate for the pre-removal period.") *and Diop*, 656 F.3d at 232–33 (3d Cir.) ("At a certain point, continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community. This will necessarily be a fact-dependent inquiry that will vary depending on individual circumstances. We decline to establish a universal point at which detention will always be considered unreasonable.").

Given the diverse nature of each immigration case, the Court finds it most appropriate to conduct an individualized assessment of whether detention has become unreasonably prolonged in the pre-final removal order context on a case-by-case basis. Courts balance and consider "the length of detention to which the petitioner has already been subjected, the likelihood of deportation, the potential length of the detention into the future, the likelihood that release will frustrate the petitioner's actual deportation, and the danger to the community posed by the petitioner if released." *Ly*, 351 F.3d at 268 (citation omitted).

B. Petitioner's detention is reasonable.

Having determined Section 1225(b)(2) is subject to a reasonable time limitation, this Court turns to whether Petitioner's detention of over 140 days is unreasonable, thereby rendering Section 1225(b)(2) unconstitutional as applied to him. The length of detention weighs heavily against Petitioner's claim for prolonged detention given he has only been detained for about 4 months to date.[8] The Court notes that an adjudication that his detention is not prolonged yet has no bearing on whether it may become prolonged in the future. After due consideration of the facts of this case, the Court finds Petitioner's detention is not unreasonably prolonged and Section 1225(b)(2) is constitutional as applied to him.

## CONCLUSION

For the reasons stated herein, the Court finds Section 1225(b)(2)(A) is constitutional as applied to Petitioner at this point. The Court makes no conclusion as to whether there may be a point in time his detention without an individualized justification becomes unconstitutional.

Accordingly, **IT IS HEREBY ORDERED** Petitioner's "Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241," ECF No. 1, is **DENIED**.

**IT IS FURTHER ORDERED** Petitioner's "Motion to Expedite Consideration of Petition for Writ of Habeas Corpus," ECF No. 2, is **DENIED AS MOOT**.

**SIGNED** this **20th** day of **July 2026**.

**THE HONORABLE DAVID BRIONES**
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[8] Notably, Petitioner's claims that he may be eligible for asylum because "the United States Government previously determined that the persecution suffered by [his] family was sufficient to warrant protection under United States asylum laws," and that he is not a danger to the community or a flight risk were undisputed by Respondents. ECF No. 1 at 4–6; ECF No. 5.